**In re GUNNING et ux.**

**No. B–8075.**

District Court, E. D. Washington, N. D.

April 8, 1942.

Robertson & Smith, of Spokane, Wash., and John T. Raftis, of Colville, Wash., for J. W. Neely.

Brown & Huneke, of Spokane, Wash., for Farm Debtors and the Farm Debtors Estate in Bankruptcy by appointment for that purpose.

Henry R. Newton, of Spokane, Wash., for Federal Land Bank of Spokane and Federal Farm Mortg. Corporation.

SCHWELLENBACH, District Judge.

Debtors' attorneys appointed on debtors' petition under General Order in Bankruptcy No. 44, 11 U.S.C.A. following section 53, seek allowance of $2,500 fees for their services in the successful defense in this Court and in the Circuit Court of Appeals against the petition of one J. W. Neely. Neely v. Gunning, 9 Cir., 124 F.2d 7; In re Gunning, D.C., 38 F.Supp. 500. Neely sought the declaration that the rights of the bankrupts in and to certain real and personal property covered by a conditional sales contract had terminated prior to the institution of these proceedings. Had he succeeded, practically no property would have remained for this Court to administer. The property involved has been appraised here at $46,868.02. Against it, there are mortgages to the Federal Land Bank and the Federal Farm Mortgage Corporation in the amount of $17,000. The balance due on the contracts approximates $14,000. Unsecured claims have been filed in the amount of $1,000. What the attorneys actually accomplished was to preserve for the bankrupt estate the right, under Title 11 U.S.C.A. § 203, subs. a–s, inclusive, to take advantage of the three year judicial stay with the debtors in possession with the right to operate the farm properties involved so as to give to the bankrupts' estate the opportunity afforded during that time for such rehabilitation of the property and of the financial situation of the debtors as to make possible the salvaging of the equity which exists in the property. The Conciliation Commissioner has on hand approximately $2,500. Of this, $973 was derived from the sale of unencumbered assets. The remainder comes as a result of the rental agreement entered into as provided in the statute. 11 U.S.C.A. § 203 sub. s(2).

What funds can be used to pay attorneys' fees? The attorneys concede that the rental funds cannot be so used. Federal Land Bank of New Orleans, La., v. Searcy, 5 Cir., 109 F.2d 418. The contract vendor contends that none of the funds can be so used. He urges that the attorneys must look to the farm debtors for their compensation. He argues that they alone benefited from the litigation. Clearly, the designation by the conciliation commissioners of attorneys to preserve the property for the bankrupt estate is just as much a conservation of the estate as was the payment of the various items approved in Adair v. Bank of America National Trust & Savings Ass'n, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889. It must be remembered that the purpose of this Act for the rehabilitation of farmers was to prevent the evils of liquidation and not merely to protect the interest of creditors. Wright v. Vinton Branch of Mountain Trust Bank of Roanoke et al., 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. The mortgage creditor insists the Adair case is only helpful and may only be followed while the debtor was under the composition and extension provisions of the Act. This Court will not mutilate the law by thus narrowly construing it. It will not permit its benefits to be frittered away by narrow, formalistic interpretations which disregard the spirit and the letter of the Act. Wright v. Union Central Life Insurance Co. et al., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184; Wright v. Logan et al., 62 S.Ct. 508, 86 L.Ed. ——, decided February 2, 1942. The contract vendor urges that there is a difference between this case and those cases in which the efforts of attorneys create or materially increase the size of a bankruptcy estate. To my mind, that is merely a play upon words. I can see no essential difference between the efforts of an attorney who protects an estate against those who would decrease its size by taking assets out of it and the efforts of an attorney who protects an estate against those who attempt to prevent its attaining its proper size by keeping assets away from it.

The attorneys are entitled to be compensated out of any funds in the estate except those which may have been derived from the rental agreement between the conciliation commissioner and

380

the debtor in possession. 11 U.S.C.A. § 104.

■ The next question is the amount of the allowance. The only testimony upon this point was submitted by a Spokane attorney who assumed as his basis for estimating the amount that the attorneys had preserved an asset of the value of $46,000. Such an assumption was obviously incorrect. The task of the attorneys here required diligence and legal skill. They evidenced the use of both of these attributes. In this Court and in the Circuit Court of Appeals, they filed well-reasoned briefs and were successful. However, many of the arduous duties ordinarily involved in litigation were avoided. There was no trial. No testimony was taken. The matter was submitted to me on an agreed statement of facts on briefs without oral argument. The record which went to the Circuit Court of Appeals was not long. All of the expenses of the attorneys in the case, including a trip to San Francisco, have been paid by the estate. It is true the element of contingency is involved here. Had the attorneys not succeeded, their compensation would have been nominal. On the other hand, they knew that this was a bankruptcy matter in which it is the Court's duty to exercise every care in seeing that the funds of the estate are protected. In re Iron Clad Mfg. Co., 2 Cir., 215 F. 877; In re Consolidated Distributors, Inc., 2 Cir., 298 F. 859. The attorneys rely in support of the amount of their claim for compensation on the case of In re Barceloux, 9 Cir., 74 F.2d 288. There the court approved an allowance of 20 per cent of $125,000. In that case, however, ten separate law suits were involved. They resulted in increasing the amount of the estate from $664 to $125,000. One of these cases was twice before the Circuit Court of Appeals and once before the Supreme Court. In the expenses of the litigation, counsel advanced $4,500. I see no great similarity between that case and this. In this case, giving due credit to counsel's skill and diligence and success, I am of the opinion that they will be compensated fully upon payment of $300 as fees in this Court and $600 for the work in the Circuit Court of Appeals, making a total amount of $900.

I will sign an order in conformity with this opinion.